UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RECEIVED
FEB 2 5 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

ALIPIO M. SIWA,
      Plaintiff,

v.

U.S. OFFICE OF PERSONNEL MANAGEMENT,
      Defendant.

Civil Action No. 07-0960 (RJL)

## MOTION FOR RECONSIDERATION

Plaintiff most respectfully moves for reconsideration of the MEMORANDUM OPINION dated February 4, 2008, which he recieved only on February 15, 2008, because it is a form of DISCRIMINATION and the Court will err in granting the motion "on the ground that plaintiff's claim is barred by the doctrines of res judicata and collateral estoppel".

Plaintiff noted that this Court has been assigned to Chief Judge Thomas F. Hogan to consider and resolve the PLAINTIFF'S RESPONSE TO THE "DEFENDANT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGEMENT", the consideration and resolution of which will have a different meaning. See the CLERK'S OFFICE, UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA dated Friday, May 25, 2007 under ENCLOSURE "1".

Plaintiff asserted in his Plaintiff's Response To The "Defendant's Motion To Dismiss, Or, In The Alternative, For

Summary Judgement" the following:

1. Under Sec. 3(b) of the ACT of January 24, 1942, the President was provided for by law the "Power To Exclude" Executive branch employees from CSRA coverage by way of Executive Order 9154 of May 1, 1942, 7 FR 3275, effective January 24, 1942. See EO 9154 under APP. A-1, as amended by Section 2 under EO 12107 of Dec. 28, 1978, 44 FR 1055, 3 CFR, 1978 Comp. p. 264, and thus, Section 1(i) of EO 9154 does not authorized the exclusion from CSRA coverage of those employees who became eligible for "permanent or indefinite", hence, employees under "permanent or indefinite appointment" were covered under the CSRA;

2. The President issued Executive Order 12292 of February 23, 1981, 46 FR 13967 and had specifically provided that EO 9154, as amended, is one of the "existing Executive Orders", and thus, EO 9154, as amended by EO 12292 of February 23, 1981, is existing and effective since 1942 through 1981, and until the present time. See the Preamble and Section 1 of EO 12292 under APP. A-13;

3. The "TENURE of an indefinite appointment" is that "for an unlimited period of time" while the "TENURE of a temporary appointment" is that "for a limited period of time" pursuant to Sec. 1.3(e) of Rule I of the Civil Service Rules, as amended by EO 10577 of November 23, 1954, 19 FR 7521, effective January 23, 1955, and as amended by EO 12107 of December 28, 1978, 44 FR 1055, effective January 1, 1979. See App. A-2 and App. A-2a, App. GC35-6, and App. GSC35-14. The Commission, and later on

the OPM, was authorized by the President pursuant to Sec. 2.2(c) of Rule II of the Civil Service Rules, as amended by EO 10577, effective January 23, 1955, and as amended by EO 12107, effective January 1, 1978, to –

> ". . . determine the types, duration, and conditions of indefinite and temporary appointments, and may prescribe the method for replacing persons holding such appointments."
> (See App. A-7 and App. A-7a)

The Commission, and later on the OPM, was under all the full obligations to obey and determine the types, duration, and conditions of indefinite and temporary appointments. Under The Guide To Processing Personnel Actions, Chapter 35-6 (See App. GC35-6), the OPM defines an INDEFINITE APPOINTMENT, that –

> "INDEFINITE APPOINTMENT – One given a nonpermanent employee who is hired <u>for an unlimited period of time</u>."
> (Underscoring supplied)

The OPM defines a TEMPORARY APPOINTMENT (See App. GSC35-14), that –

> "TEMPORARY APPOINTMENT – An appointment made <u>for a limited period of time</u> and with a specific not-to-exceed (NTE) date determined by the authority under which the appointment is made."
> (Underscoring supplied)

The "type, duration, and condition" of an INDEFINITE APPOINTMENT is that "for an unlimited period of time" (Without time limitation) while the "type, duration, and condition" of a TEMPORARY APPOINTMENT is that "for a limited period of time" (With a time limitation), and thus, the "TENURE of an Indefinite Appointment" is that "for an unlimited period of time" (Without time limitation) while the "TENURE of a Temporary

Appointment" is that "for a limited period of time" (With a time limitation). Let us analyze "Excepted Appt - Indefinite". The meaning of the term "indefinite" means "unlimited" or "without time limitation", and thus, the meaning of "Excepted Appt - Indefinite" is "Excepted Appt - unlimited" or "Excepted Appt - without time limitation". For example: An employee was given the Nature of Action Code ("NOAC") "172" and the Nature of Action ("NOA") "EXC APPT - INDEFINITE" dated effective 10-06-81. See App. F-5. On "10-06-81", he received a "CORRECTION" from his "EXC APPT - INDEFINITE" to a NOAC "170" and the NOA "EXC APPT" with the "Remarks" on Item 37, that -

> "NOAC/NOA SHOWN ON ORIGINAL ACTION ARE NO LONGER IN USE. THEY WERE REQUIRED UNDER FPM SUPPL 296-31 WHICH HAS BEEN REPLACED BY FPM SUPPL 296-33."
> (See App. F-6)

In other words, the NOA "EXC APPT - INDEFINITE" is no longer in use, but it was replaced by the NOA "EXC APPT". "Job Aid #5. Instructions for Processing Personnel Actions on Appointments in the Excepted Service under STEP 5 and STEP 6 (See App. GC11-6) -

> (STEP 5)
> To identify an excepted appointment that is "conditional," enter "2" in block 24 of the SF 52; to identify an excepted appointment that is "indefinite," or "provisional" enter "3" in block 24 of the SF 52.
>
> (STEP 6)
> Prepare the SF 50 from the information on the SF 52.

In other words, an "Exc Appt" is Permanent if "Tenure 1" is entered on the SF-50; An "Exc Appt" is Conditional if "Tenure 2" is entered on the SF-50; And an "Exc Appt" is Indefinite

if "Tenure 3" is entered on the SF-50, but all of these are designated as "EXC APPT (Without time limitation)". Therefore, an "EXC APPT (Without time limitation)" is the opposite of a "Temporary Appointment" ("Exc Appt NTE (date)") which is an appointment "With a time limitation);

4. The Commission had violated the "regulations of the President" under Sec. 1.3(e) of Rule I and Sec. 2.2(c) of Rule II of the Civil Service Rules, as amended by EO 10577, effective January 23, 1955, by applying Section 2(e) of the 1956 CSRA Amendments to exclude from CSRA Coverage the "TENURE of an Indefinite Appointment", but the Commission was only authorized by law to exclude from CSRA Coverage those employees "whose tenure of office or employment is temporary or intermittent", that is, a Temporary Appointment ("Exc Appt NTE (date)") with a TENURE of "for a limited period of time" or "With a time limitation". The Commission excluded from CSRA Coverage the following -

> "(14) Employees serving under nonpermanent
> appointments, designated as indefinite, made
> after January 23, 1955, the effective date
> of the repeal of Executive Order 10180."
> (See 5 CFR 831.201(a)(14) (1963-1978);

5. The OPM was generally and specifically notified by the President of the existence and effectivity of the "regulations of the President" under Section 1(i) of EO 9154 pursuant to Section 2 of EO 9154, as amended by EO 12107, effective January 1, 1979. See Section 2 of EO 9154 under App. A-1. The OPM had violated the "regulations of the President" under Sec. 1.3(e)

of Rule I and Sec. 2.2(c) of Rule II of the Civil Service Rules, as amended by EO 10577, effective January 23, 1955, and as amended by EO 12107, effective January 1, 1979, to exclude from CSRA Coverage the "TENURE of an Indefinite Appointment", in violations of Section 1(i) of EO 9154 and Section 2(e) of the 1956 CSRA Amendments. Therefore, the OPM excluded from CSRA Coverage the following:

> "(14) Employees serving under nonpermanent appointments, designated as indefinite, made after January 23, 1955, the effective date of the repeal of Executive Order 10180."

5 CFR 831.201(a)(14) (1963 to 1987) was renumbered by the OPM in 1988 as 5 CFR 831.201(a)(13) (1988 to Present). See 5 CFR 31.201(a)(13) under App. A-8;

6. This is a form of DISCRIMINATION. The OPM promulgated a personnel regulation that "All employees are covered by the retirement system except those specifically excluded by law or by regulations of the Office of Personnel Management" pursuant to FPM Supp. 831-1, subch. S2-1 (Sept. 21, 1981). The OPM knew that Plaintiff was not specifically excluded from CSRA Coverage by law or by regulations of the OPM because of his "EXC APPT" under "Tenure 1" or "Tenure 3", and thus, the OPM had violated the said personnel regulation under FPM Supp. 831-1, subch. S2-1 (Sept. 21, 1981) because of its failures and/or refusals to cover the Plaintiff under the retirement system, to his damaged and prejudiced;

7. Counsel United States Attorney JEFFREY A. TAYLOR and

Counsel Assistant United States Attorney RUDOLPH CONTRERAS have not submitted "an entry of appearance".

Whereto I can complaint for DISCRIMINATION against the OPM?

Plaintiff asserts, that -

It is wrong to upheld the OPM regulation interpreting the exclusion from CSRA Coverage of "temporary" employees to include employees serving "indefinite" appointments because the "TENURE of a Temporary Appointment" is "for a limited period of time" or "with a time limitation" while the "TENURE of an Indefinite Appointment" is "for unlimited period of time" or "without time limitation", a gross violation of Section 2(e) of the 1956 CSRA Amendments. In "January 1982" (See the uppermost left-hand corner of App. F-6), and thereafter, the OPM promulgated the Rules (See App. GSC11-12) that "Tenure 1" (Permanent Appointment), "Tenure 2" (Conditional Appointments), and "Tenure 3" (Indefinite Appointment) shall belong to "EXC APPT" (Without time limitation) while "Tenure 0" (Temporary Appointment) shall belong to "EXC APPT NTE (date)" (With a time limitation) and that "EXC APPT" (Without time limitation) is different from "EXC APPT NTE (date)" (With a time limitation).

The Plaintiff further asserts that "plaintiff's claim is barred by the doctrines of res judicata and collateral estoppel" is without bearing in this appeal for DISCRIMINATION against the OPM.

WHEREOF, premises considered, the Plaintiff most respectfully prays of to the Honorable Court for any help and relif that are necessary in the premises.

Respectfully submitted. This 18th day of February 2008 at Olongapo City, Philippines.

Very respectfully yours,

ALIPIO M. SIWA
Plaintiff Pro Se

## PROOF OF SERVICE

I hereby certify under penalty of perjury under the laws of the United States that on February 18, 2008, I have mailed a copy of the foregoing via air mail delivery to -

Mr. WYNEVA JOHNSON
Assistant United States Attorney
U.S. Department of Justice
555 4th St., N.W., Civil Division
Washington, D.C. 20530

ALIPIO M. SIWA
Plaintiff Pro Se

CLERK'S OFFICE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Friday, May 25, 2007

**Civil Action#:** 070960 RJL
**Plaintiff:** ALIPIO M. SIWA

DEAR ALIPIO M. SIWA

In the above entitled case, please be advised that on 5/10/07, Judge Kollar-Kotelly endorsed theron as follows:

"Leave to file without prepayment of costs granted."

As a result of the Judge's ruling, your case has been assigned to Judge Chief Judge Hogan. All subsequent correspondence or pleadings must bear the civil action number referred to above, followed by the initials of the Judge assigned to your case.

NANCY MAYER-WHITTINGTON, CLERK
By: L. Scott

ENCLOSURE "1"